## STATE v. COOPER.

No. 7186.   Decided January 14, 1949.   (201 P. 2d 764.)

See 22 C. J. S., Criminal Law, sec. 688; 20 Am. Jur. 252. Admissibility in sex offense prosecution of evidence of other similar offenses, note, 167 A. L. R. 565.

*Clair M. Aldrich*, of Provo, for appellant.

*George S. Ballif,* Dist. Atty., of Provo, *Grover A. Giles,* Atty. Gen., and *A. John Brennan,* Asst. Atty. Gen., for respondent.

WOLFE, Justice.

Appeal by the defendant from a verdict and judgment of guilty of the crime of indecent assault. The offense is defined by Section 103-7-9, U. C. A. 1943, as follows:

"Every person who shall assault a child, whether male or female, under the age of fourteen years, and shall take indecent liberties with or on the person of such child, without committing, intending or attempting to commit the crime of rape, upon such child, with or without the child's consent, is guilty of a felony."

The purported offense was charged in the information to have taken place on or about April 18, 1947, in the automobile of defendant while in the Orem city cemetery, and to have been committed upon the person of Doral Elder, then a child 11 years of age.

Testimony adduced by the State tended to prove that on the afternoon of April 8, 1948, defendant had taken Doral Elder and Ferrell Sorenson, another boy of about the same age, in his automobile to the Orem city cemetery; that after examining certain graves and especially the grave of the defendant's son, the defendant and two boys had climbed back into defendant's car, defendant and Elder into the front seat and Sorenson in the back seat; that thereupon defendant committed an indecent assault upon the Elder boy by manipulating his private parts. Defendant testified in his own behalf, and, of course, denied commission of the act. Other facts may be more conveniently detailed in the discussion of the various points involved.

Defendant's first assignment of error, and the one principally relied upon by him for reversal of the judgment, relates to the admission of certain testimony introduced in evidence on the redirect examination of the witness Gary Wilkinson. On direct examination, Wilkinson testified that

he was acquainted with defendant; that some time after the present criminal action against defendant had been initiated, defendant had accosted the witness on a street of Provo; that defendant had requested the witness to step into the entrance to an office building with him; that the defendant asked the witness whether he (the witness) was going on the witness stand, and when the witness answered in the affirmative, the defendant had drawn his pocket knife and opened the blade and again asked the witness if he "was still going to be on the witness stand," and thereupon the witness fled in fear. He further testified that he ran to a nearby drug store and called his mother, who caused defendant to be arrested.

On cross-examination, and apparently for the purpose of showing that the witness had no basis for fearing the defendant, and that defendant's pulling his knife from his pocket was not a threat but merely a nervous habit, counsel for defendant elicited testimony that defendant and the witness had always been good friends, that the defendant had often done favors for the witness, and that the witness had no reason to fear the defendant.

On redirect examination, counsel for the defendant objected to testimony that the defendant had "played nasty" with the witness. The basis of the objection was the rule that ordinarily evidence of the commision of other crimes of a like nature is not admissible to prove or as tending to prove the commission of the crime charged. The prosecuting attorney stated that the evidence was offered for the purpose of rebutting the inference raised by the cross-examination of the witness, i. e. that the witness had no grounds or basis to fear the defendant. The trial judge admitted the testimony only for the limited purpose for which it was offered, i. e. to show that the witness did have a basis to fear defendant, and to rebut the inference raised on cross-examination.

In his brief, defendant has argued that the admission of this testimony was error, on the theory that evidence

of the commission of other crimes is not ordinarily admissible to prove the commission of the crime charged. The rule relied upon by defendant is discussed at some length in the recent case of *State* v. *Scott*, 111 Utah 9, 175 P. 2d 1016. In that case we traced the history of the rule, particularly in this state, and pointed out that in the earlier Utah cases the rule had been stated as a general exclusionary rule, subject to many exceptions; but in the later cases, and especially *State* v. *Nemier*, 106 Utah 307, 148 P. 2d 327, this court had followed the view of the American Law Institute as expressed in the Model Code of Evidence, Rule 311, that

"evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible as tending to prove that he committed a crime or civil wrong on another occasion, *if, but only if,* the evidence is relevant solely as tending to prove his disposition to commit such a crime or civil wrong or to commit crimes or civil wrongs generally." (Italics added.)

The rule as thus stated was unqualifiedly adopted by this court in the Scott case.

The crime here charged is a type of homosexual offense. It is not necessary at this time to determine whether in any or all cases of this sort evidence of other crimes of the same nature should be received. That is a question involving serious complications and many ramifications, and one which does not seem to have often come before the appellate courts of this country or to have received any great amount of attention from the legal text writers. Homosexual practices may result either from congenital homosexuality, psychopathic homosexuality, or excessive sexual vigor expressed in homosexual practices in the absence of opportunity for heterosexual relations. Congenital homosexuals, and to a certain extent, psychopathic homosexuals, may be wholly unresponsible for their homosexual acts. They are motiviated by biological and physiological factors which may be beyond their power to combat or control. And while such persons cannot be left

to prey upon society, and particularly upon young children, the wisdom of declaring their conduct to be criminal may be seriously questioned. In the light of advanced biological and medical knowledge, the legislature might well provide for their confinement in sanitaria for necessary treatment. Up to now the legislature has made no distinction between the various classes of offenders of this type, and we have no choice but to accept the legislative mandate. In cases of this sort, whether evidence of other crimes of the same nature should be admitted must depend largely on the medical evidence in each case. In any event, it is a problem which we need not, and in propriety should not, attempt to solve at this time. For an interesting discussion of the medico-legal problems involved, and suggesting some of the difficulties, see Herzog, Medical Jurisprudence, Chapter XXXVIII. See also annotation in 167 A. L. R. 621-623 for a citation and discussion of such few cases as have been decided relative to this question.

As above stated, we are not here concerned with the general question of whether evidence of other similar homosexual offenses should be admissible in cases of this sort. The testimony to which objection was taken was carefully limited in its purpose by the trial judge. The real issue before us is whether the testimony was properly admitted to rebut the inference raised on cross-examination. It involves simply the question of the extent to which counsel may be permitted to go in redirect examination. It is the general rule, of course, that the scope of redirect examination is limited to the field covered in cross-examination. As a general rule any evidence logically tending to rebut the inferences raised on cross-examination is admissible. However, testimony which may have some slight weight or tendency to rebut the inferences raised on cross-examination may not be admitted if it is is too remote, or collateral to the principal inquiry, or especially if it is apt to mislead or confuse the jury, or arouse their passions or prejudices. The extent to which

redirect examination may be permitted to go rests to a large extent in the sound discretion of the trial court; and unless abuse of discretion can be shown in admitting or excluding testimony, the ruling of the trial court will not be disturbed.

In 20 Am. Jur. 252-3, Evidence, Sec. 263, the rule is stated thus:

"Evidence may be clearly incompetent for one purpose, and the same evidence may be entirely proper for the latter purpose, even though the jury may erroneously use it for other purposes, unless the risk of confusion by the jury is so great as to upset the balance of advantage of receiving it. It cannot be excluded merely because it is incompetent for some purposes."

See also *Smith* v. *Mine & Smelter Supply Co.*, 32 Utah 21, 88 P. 683.

There can be little question that the testimony received on redirect examination had some probative value in rebutting the inference raised by cross-examination. The purpose and effect of the direct examination was to show that the defendant had made threats against the witness. By cross-examination the defendant attempted to show that the relationship between defendant and witness was one of wholesome friendship, and that an innocent act on the part of defendant was a result of nervous habit, and was misconstrued by the witness as a threat against him. The testimony on redirect examination that the defendant had committed criminal acts upon the witness showed knowledge on the part of the witness that defendant had committed such acts and also knowledge by defendant that the witness had such knowledge. Hence, it tends to show motive on the part of defendant for threatening the witness and thus lends force to the testimony on direct examination that the knife drawing incident was in fact a threat, and not the innocent product of habit. And the threat being for the purpose of suppressing evidence in this case, it is probative of the defendant's knowledge of guilt. It also serves to rebut the inference attempted

to be raised on cross-examination that the relationship between the witness and defendant was one of wholesome friendship.

On the other hand, there is force in the argument that the evidence of other criminal acts would tend to inflame the passions and prejudices of the jurors. The trial court weighed the conflicting considerations and determined that the evidence should be received. In this connection it should be noted that at the time the testimony was received, the record was replete with evidence of other similar criminal acts committed by defendant, most of such evidence having been received without objection. It is fair to assume that the trial judge was influenced by this factor in receiving the testimony on redirect examination. The court might well have concluded that the admission of evidence of one or more criminal acts could do but little, if any, additional damage to defendant's case, in view of the evidence already before the jury. Had there been no other evidence of other similar crimes, the court might well have ruled differently, and excluded the evidence placed before the jury on redirect examination. The trial court cannot be said to have abused its discretion in admitting this testimony under the facts and circumstances of this case.

By his second assignment of error, defendant attacks the court's instruction No. 8, which was as follows:

"You are hereby instructed that in order to find the defendant guilty of either crime charged in the information, it is not necessary that the state prove that the circumstances constituting the offense charged occurred on the 18th day of April, 1947, but it is necessary that the evidence introduced in the case establish to your satisfaction beyond reasonable doubt that the offense charged occurred at or near the cemetery at Orem, Utah County, Utah, in an automobile in which the defendant, Grant Cooper, Doral Elder and Ferrell Sorenson were sitting. And unless the evidence so establishes beyond reasonable doubt, it is immaterial and can make no difference to this charge that you find or believe, if you do find or believe, that the defendant did at some other time or place take indecent liberties with or upon the person of Doral Elder."

Both the complaint and the information charged that the offense occurred "on or about the 18th day of April, 1947." All of the state's evidence tends to fix April 8, 1947, as the date of the alleged offense. While defendant concedes that the time and date of the offense is not an element of the crime, he nevertheless contends that this instruction

"left to the jury a broad range for conjecture and speculation with nothing to limit the members of the jury to a mutual selection of the same purported offense as the basis of their verdict."

Defendant further contends that the instruction

"is patently conflicting, ambiguous, and confusing."

While the instruction is not as happily worded as it might have been, it is neither erroneous in point of law, nor so ambiguous and confusing as to be calculated to mislead the jury. The instruction first advises the jury that it is not necessary to a conviction that the offense be committed on the date charged in the information. It then further advises the jury that it is necessary to a conviction that they believe beyond a reasonable doubt that the offense was committed at or near the Orem cemetery in an automobile in which defendant, Elder, and Sorenson, were sitting. The court then admonished the jurors that belief that the defendant may have taken indecent liberties with the person of Elder, under circumstances other than those above described, could not support a verdict of guilty. This is the only fair and reasonable construction which could be placed on the instruction. There can be little doubt as to the correctness of the rules thus stated to the jury. The instruction is substantially similar to the one approved by this court in *State* v. *Distefano,* 70 Utah 586, 262 P. 113.

The issue of time may be very important where defendant's defense is alibi. See *State* v. *Waid,* 92 Utah 297, 67 P. 2d 647. However, no defense of alibi was advanced by defendant in this case.

Likewise, the question of time may be important where there is danger of double jeopardy. Thus, where the defendant has committed a number of identical or similar crimes, under substantially similar circumstances, except as to the time of the offense, it may be very important to establish with a great degree of particularity the time of the offense, so that there may be no danger of double jeopardy. While in this case there is considerable evidence of other similar offenses committed by defendant, both upon the persons of other boys and upon the person of Doral Elder, there is no hint that any of these other offenses occurred at or near the Orem Cemetery. In this case, the act with which defendant was charged was sufficiently identified and singled out by the locus of the offense, and the particular circumstances surrounding it, viz., that it was committed upon the person of Doral Elder in the front seat of defendant's car, while Ferrell Sorenson was sitting in the rear seat. For aught that appears in the record, there can be no danger of double jeopardy to this defendant, even though the State's evidence pointed to a crime committed some ten days before the date alleged in the information. In this connection, we said in *State* v. *Distefano*, 70 Utah 586, 262 P. 113, 116:

"It is therefore well established in this jurisdiction that where time is not of the essence of the crime the exact time is immaterial, and if the evidence otherwise supports the charge relied upon by the prosecution, a conviction may not be set aside because the crime was committed after the date charged in the information or indictment, so long as it was committed prior to the bringing of the prosecution."

See also the concurring opinion of Mr. Justice Straup, wherein it was said:

"It undoubtedly is true that the state in the first instance is not bound by or confined to the exact date stated in the information. It may elect to prove the charged offense at any time prior to the filing of the information and within the statute of limitations; * * *."

We treat next defendant's contention that the trial court erred in denying his motion for new trial on the grounds

of newly discovered evidence. The basis of defendant's motion was this:

At the preliminary hearing of this matter, the state's evidence had all pointed to April 18, 1947, the date set forth in the complaint and information, as the date of the alleged offense. Relying upon this, counsel for defendant had contacted the caretaker of the Orem cemetery who had stated that he was willing to testify that he was present in the cemetery on April 18, 1947, at the time the purported offense took place, and that he would have seen defendant and the two boys had they been there at that time, and that he did not see them there. However, the caretaker's employment had commenced on April 15th, and he was therefore unable to testify as to the situation on April 8th.

After the trial, counsel for defendant interviewed the previous caretaker of the cemetery, who had been employed there on April 8, 1947, and who executed an affidavit to the effect that he was present in the cemetery on April 8, 1947, at the time the purported offense was alleged to have been committed; that he would probably have observed automobiles entering or leaving the cemetery; and that he did not see defendant nor any other person with two young boys on that occasion.

Two men who had been employed as laborers working on a bridge on the road leading to the cemetery on April 8, 1947, executed affidavits to the effect that they were in a position to observe the movement of traffic into, and out of the cemetery; that they knew defendant by sight; that they did not see him on the date in question; and that if he had been thereabouts, they would have in all probability observed his presence.

All of the above information was put in affidavit form, affidavits being executed by the former cemetery caretaker, the two workmen, and counsel for defendant. Said affidavits were filed with the court in support of the motion for new trial.

In the recent case of *Moser* v. *Zion's Co-op. Mercantile Inst.*, 114 Utah 58, 197 P. 2d 136, 139, we had occasion to consider at some length the question of granting a motion for new trial on the grounds of newly discovered evidence; and we there reviewed all of the earlier Utah cases treating that question. In summary, we said:

"It is a matter now too well settled to admit of any serious dispute * * * that the question of granting or denying a motion for new trial is a matter largely within the discretion of the trial court. * * * This rule applies whether the motion is based upon insufficiency of the evidence or upon newly discovered evidence. * * * This court cannot substitute its discretion for that of the trial court. * * * We do not ordinarily interfere with rulings of the trial court in either granting or denying a motion for new trial, and unless abuse of, or failure to exercise, discretion on the part of the trial judge is quite clearly shown, the ruling of the trial judge will be sustained.

\* \* \* \* \*

"The granting or denial of a motion for new trial on the ground of newly discovered evidence is a matter within the trial court's discretion, which is conclusive unless abuse of discretion is shown."

We also quoted with approval the following from *Jensen* v. *Logan City*, 89 Utah 347, 57 P. 2d 708, 723:

" 'It is only under very special circumstances, because of the quality or type of proposed evidence and *where it makes clear a fact which was formerly in doubt* that new trials are granted to allow the defeated party to add cumulative evidence, newly discovered, and then only *where there is a clear probability that the result of a new trial will be different.*' " (Italics added.)

The defendant's newly discovered evidence would at most show that the defendant was not observed, in or near the cemetery, by persons having an opportunity to observe, at the time when the alleged offense was purportedly committed. The testimony of these witnesses, even if accepted as true by the trier of fact, would not necessarily prove that defendant was not in the cemetery at the time of the alleged offense. The trial court evidently con-

sidered the newly discovered evidence as of such slight weight, when, counterpoised against the direct testimony of Doral Elder and Ferrell Sorenson as to the commission by defendant of the crime charged to have been committed by him at that time and place, as not to create any "clear probability that the result of a new trial will [would] be different." We cannot say that the trial judge abused his discretion in so ruling. And in this connection it should be noted that after the state had rested its case, the district attorney moved to amend the information to read "the 8th day of April" instead of "on or about the 18th day of April." Counsel for defendant at that time stated, "That is satisfactory." The motion was then withdrawn, but was renewed at the conclusion of the trial, at which time it was denied. The important point is that counsel for defendant indicated to the court that he had no objection to amendment to the complaint, and that the defense was then prepared to proceed with evidence to rebut evidence that the defendant had committed the crime charged on April 8th. Had defendant at that time made the argument which he now makes, namely, that he was not prepared to defend against any charge of a crime committed on the 8th; that he assumed the state would rely on the date charged in the information; and that he would need additional time in order to prepare his defense to meet the new turn taken by the evidence at the trial, there might be considerable merit to his proposition. But having failed to indicate to the trial court the true situation, and having failed to ask for continuance, but instead having acquiesced in a motion by the State to amend the date contained in the information, he is hardly in a position now to complain that he did not have a full and fair opportunity to discover by due diligence all of the evidence that was available to him.

Defendant also asserts that the trial court erred in denying a motion for new trial on the grounds that the prosecuting attorney, in his argument to the jury, made improper and prejudicial statements. The arguments to the jury by counsel are not preserved in the rec-

ord, and hence we cannot know what arguments were made, and cannot say that the trial court abused its discretion in denying a motion for new trial on this ground. In the recent case of *Schlatter* v. *McCarthy*, 113 Utah 543, 196 P. 2d 968, 975, we said:

> "Since the arguments of counsel were not preserved in the record, we are hardly in a position to say that the argument of plaintiff's counsel to the jury was improper, and grounds for reversal. Error will not be presumed, nor can we presume misconduct on the part of counsel. * * * There is nothing in the record before us on which this court could hold counsel guilty of improper conduct."

Defendant has also assigned as error the court's refusal to give his requested instruction No. 1. No exception having been taken to the court's refusal to give this instruction, it is not properly before us and cannot be considered. *State* v. *Anderson*, 75 Utah 496, 286 P. 645.

No error having been shown, the judgment is affirmed.

PRATT, C. J., and LATIMER, J., concur.

WADE, Justice, concurs, but expresses no opinion on unnecessary matter discussed.

McDONOUGH, Justice, concurs in the result.