UNITED STATES, Appellee

v

HERBERT GEHRING, Private E–2, U. S. Army, Appellant

6 USCMA 657, 20 CMR 373

No. 7043

Decided February 17, 1956

*First Lieutenant Philip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott.*

*Captain Vernon M. Culpepper* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Robert L. Taylor.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Brought to trial before a general court-martial on sixteen specifications under three separate charges, the accused was convicted on seven. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for three years. The convening authority approved the findings of guilty and modified the sentence by reducing the term of confinement to two years. A board of review affirmed. The accused petitioned this Court for a grant of review alleging a number of errors. We granted review on the single issue of whether the evidence is sufficient to support the findings of guilty of the two specifications of Charge I, on which the accused was convicted.

Each of the specifications of Charge I alleges that the accused violated paragraph 8, Special Instructions No. 3, Headquarters Far East Command, dated March 8, 1954, by accepting military payment certificates from unauthorized sources. Specification 1 alleges the acceptance of $255.00 on or about July 15, 1954, and specification 5 charges an acceptance of $250.00 on or about July 21, 1954. Four other specifications, alleging violations of the same regulation, were included. The date and the value of the certificates in each of those transactions are as follows: specification 2—July 16—$220.-00; specification 3—July 17—$200.00; specification 4—July 20—$250.00; specification 6—July 22—$200.00. A motion for findings of not guilty as to these specifications was granted by the law officer, without objection by any court member. Later, however, the

court also brought in specific findings of not guilty on these specifications.

At the trial, the court-martial took judicial notice of paragraph 8, Special Instructions No. 3. The prosecution showed that at or about 11:30 a.m. on "almost every day" in July 1954, the accused appeared at the American Express Company office at Camp Chitose, Japan. He would exchange between $200.00 and $250.00 in military payment certificates for Japanese yen. However, for each transaction he signed the yen sales register with a different name, serial number, and organization. This circumstance was noted by one of the three Japanese tellers "about the middle" of the month. He discussed the matter with the others. Two of the tellers appeared as prosecution witnesses. They testified that they made a special note of the accused's exchanges. They identified the following entries on certain of their yen sales register sheets as representing exchanges by the accused:

| Date | Signatures | Serial No. | MPC | Yen |
|---|---|---|---|---|
| July 15 | Sgt J. L. Glidden | 18266789 | $255.00 | 91,800 |
| July 16 | Cpl J. L. Jager | 18267822 | $200.00 | 72,000 |
| July 17 | Sgt A. L. Hallowitz | 23506271 | $220.00 | 79,200 |
| July 20 | Cpl C. Mercelles | 18005768 | $200.00 | 72,000 |
| July 21 | Cpl Deker Dallas | 19395106 | $250.00 | 90,000 |

On July 23 the accused was apprehended by military police at the American Express Office. He was turned over to Criminal Investigation Detachment agents for questioning. He was warned of his rights under Article 31, Uniform Code of Military Justice, 50 USC § 602, and interrogated. About five hours later, he signed and submitted a written statement. In it he admitted that "on or about 12 July 1954," he exchanged "about $150.00" in military pay certificates for 54,000 Japanese yen, and "on or about 21 July" he exchanged approximately $235.00 for yen. In the evening of the same days, he exchanged the yen for military payment certificates in a transaction with a Korean or Japanese male. The accused did not know the man by name, but he could identify him and he knew the location of his house in Chitose. The accused also admitted that he made several thousand yen "commission" on each transaction. The next day, July 24, the accused accompanied Criminal Investigation Detachment agents and the Japanese police to Chitose, where he identified a particular house as the place where he had obtained the yen.

Testifying in his own behalf, the accused repudiated his pretrial statement. He admitted that he had been warned of his rights under Article 31, but he maintained that he was "just pressurized" into giving a false statement. He said that he had never accepted military payment certificates from an "unauthorized source." He also admitted the transactions indicated on the sales register sheets and his use of assumed names, but maintained that these were all legitimate transactions. His duties took him near the Express Company office in Chitose. Consequently, he was frequently requested by fellow soldiers to exchange military payment certificates for them.

Six members of the accused's company corroborated the accused's testimony of exchanges on behalf of his fellows. All testified that they were friends of the accused, but they flatly denied that they would lie to keep him out of jail. Their testimony is substantially the same.

All of the witnesses, except Master Sergeant C. Byrge, testified that about the middle of July, they asked the accused to exchange military payment certificates for yen because it was more convenient for him to do so than it was for them. Sergeant Byrge's testimony indicates that he had the accused exchange money for him on two separate occasions, "two to three days" apart. As to one, the accused volunteered to make the exchange when Sergeant Byrge "mentioned . . . [he] had to change some money because . . . [his] leave was approved." He gave the accused $110.00 on one occasion and

$50.00 on the other. His testimony is silent as to who initiated the transaction on the second occasion. Private B. L. Partridge also testified that he had several times requested the accused to effect exchanges for him. He recalled a specific request on July 17, and he noted that "three or four times" before that date he had asked the accused to exchange currency for him.

The amounts given to the accused for exchange varied from $50.00 to $110.00. According to the accused, however, he received "not more than two or three" requests a day. In fact, the number and aggregate amounts involved in the requests induced him to use a false name in making the changes. He had heard that there was a $500.00 a month limit. Since he was exchanging approximately $1,000.00 per month, he did not want to "endanger" himself.

Considering only the accused's pretrial statement, there is no doubt that on two separate occasions, he accepted military payment certificates from an unauthorized person. However, some question arises as to whether the offenses he admitted are the same as those charged. Ordinarily, a difference between the date alleged and the date established by the evidence is not fatal to a conviction if the latter is within the period of limitation and before the filing of the charge. Miller v United States, 19 F2d 702 (CA DC Cir) (1927); see also United States v Hopf, 1 USCMA 584, 5 CMR 12. The reason for the rule is that generally time is not of the essence of an offense. Capone v Aderhold, 65 F2d 130 (CA 5th Cir) (1933). A few cases indicate that the general rule may be limited when the accused is charged with several acts committed under substantially similar circumstances at the same place. State v Cooper, 114 Utah 531, 201 P2d 764, 769; Hosier v United States, 260 Fed 155 (CA 4th Cir) (1919), cert den 250 US 674, cited with approval in Stubbs v United States, 1 F2d 837 (CA 9th Cir) (1924), rehear den November 24, 1924. Just how far the limitation goes need not concern us at this time.

660

Recently a majority of this Court reiterated the principle that, under military law, a conviction cannot be based solely upon a confession or admission of the accused. It must appear from other evidence, directly or by fair inference, that the particular crime charged has probably been committed. The independent evidence must relate to every element of the offense. United States v Villasenor, 6 USCMA 3, 19 CMR 129.

For our purposes, we may consider the essentials of proof in this case as being three-fold: (1) That Special Instructions No. 3, Headquarters Far East Command, permits the acceptance of military payment certificates from only certain classes of persons; (2) that the accused accepted military payment certificates at the time specified in each of the specifications; and (3) that on each occasion, the acceptance was from a person outside the classes designated by the regulation. Evidence of the first element is found in the court's judicial notice of the Instructions and the presumption of its legality. Manual for Courts-Martial, United States, 1951, paragraph 171; United States v Trani, 1 USCMA 293, 3 CMR 27. Ample proof of the accused's possession of military payment certificates appears. From the fact of possession of large sums in excess of his pay and allowances it may be inferred that he had obtained the certificates from others. The only remaining issue, therefore, is whether independent evidence shows that he probably acquired them from unauthorized sources.

Unquestionably the theory of the defense indicates an authorized source for the military payment certificates which the accused exchanged. At the same time, it is important to note that it reasonably excludes the probability that the accused acquired the certificates from such activities as gambling with, or selling personal property to, authorized personnel.

In his own testimony, the accused

said that he received no more than two or three requests to exchange military payment certificates in any one day. However, the amounts received from the members of his company for exchange is far less than the sums the accused exchanged "almost every day" during July in the American Express Company office. Moreover, in every transaction the accused used a false name and organization to hide his identity. In United States v Landrum, 4 USCMA 707, 16 CMR 281, we held that numerous purchases of the same article from a post exchange within a short period of time and under fictitious names tends to show a guilty purpose on the part of the purchaser. The same inference may be drawn from the exchange transactions of this accused. Taken together, the circumstances indicate that the probable source of the greater amount of the military payment certificates exchanged by the accused was illegitimate. That is all that is necessary. The independent evidence of the offense need not by itself establish the accused's guilt beyond a reasonable doubt. Coupling the independent evidence with the accused's pretrial statement, there is no doubt that the evidence is sufficient to support the findings of guilty.

The decision of the board of review is affirmed.

Judge LATIMER concurs.