**Kenneth K. BRADFORD and Tammy Bradford, his wife, Plaintiffs and Appellants,**

v.

**ALVEY & SONS, a partnership; and Michael E. Crowley, dba Micro Investment, Defendants and Respondents.**

No. 16829.

Supreme Court of Utah.

Dec. 1, 1980.

---

Grant A. Hurst of Marsden, Orton & Liljenquist, Salt Lake City, for plaintiffs and appellants.

Ronald L. Poulton, Salt Lake City, Calvin E. Thorpe and Bryant R. Gold of Thorpe, North, Western & Gold, Sandy, for defendants and respondents.

CROCKETT, Chief Justice:

Plaintiffs Kenneth and Tammy Bradford brought suit against defendant Alvey & Sons, the builders of a home under construction in the Shiloh Subdivision in Salt Lake County, seeking specific performance, or damages for breach, of an earnest money agreement to convey the home to the plaintiffs. After a trial to the court, findings and judgment were made in favor of the defendants. Plaintiffs appeal.

On February 17, 1978, the plaintiffs made an offer to purchase a home from the defendants using the standard Earnest Money Receipt and Offer to Purchase form. The offer was made expressly conditional by a provision inserted in the form which stated: "sale subject to buyer obtaining financing (FHA)." The real estate agent who helped the plaintiffs prepare and present the offer to the defendant Alvey & Sons was Michael Herzog. He was an employee of Midvalley Investment, the real estate marketing firm which had arrangements with Alvey & Sons to sell the homes in the Shiloh Subdivision.

On February 22, 1978, the defendants accepted the plaintiffs' offer. A few days thereafter, Mr. Herzog accompanied the plaintiffs to American Home Mortgage for

the purposes of loan pre-qualification. The conference did not result in the plaintiffs filing an application for a loan, nor with that company agreeing to make one.

In March of 1979, the defendants Alvey conveyed their interest in the Shiloh Subdivision to the defendant Micro Investment. In late March of 1979, Mr. Michael Crowley of that company informed the plaintiffs that because they had failed to obtain financing within a reasonable time the company would not honor the earnest money agreement. It appears that thereafter the plaintiffs busied themselves in obtaining financing and bought this suit. In July of 1979, they submitted a "loan commitment" from Mason-McDuffie as the fulfillment of their obligation to obtain financing.

■ The issue of controlling importance in this case is the contention of the plaintiffs that the trial court erred in finding that they had failed to perform their duty to obtain financing as required by the contract. It is true that it states no particular time in which that was to be done. However, when a provision in a contract requires an act to be performed without specifying the time, the law implies that it is to be done within a reasonable time under the circumstances;[1] and in case of controversy, that is something for the trial court to determine.[2]

In support of their argument that their delay was not unreasonable under the circumstances, plaintiffs point to several aspects of their evidence. On two different occasions, they made inquiries of lending institutions about obtaining financing, but neither of those efforts proved successful. They said that they did not press efforts because the home had not been completed; and also, that representations were made to them that they need not hurry in doing so.

In regard to plaintiffs' contentions as to the disputed critical issue referred to, the court made the following findings:

2. The clause "sale subject to buyer obtaining financing" was intended by the parties thereto as a condition precedent to their being bound by the terms of the contract of sale.

3. Plaintiffs failed and neglected to apply for financing until March of 1979, and plaintiffs failed to pursue said application made in March, 1979.

4. Plaintiffs later made an additional application for financing which resulted in their obtaining a financing loan commitment in late July of 1979, several months after the initiation of this lawsuit.

5. No attempt was made by plaintiffs to tender performance pursuant to the Earnest Money Receipt until July of 1979.

6. Said loan commitment was obtained from Mason-McDuffie, a lending institution, by reason of the omitted statements that should be contained in the loan application. Said loan commitment was unenforceable.

■ In considering the plaintiffs' attack upon those findings and the refusal of the trial court to grant them specific performance, there are certain principles to keep in mind. The remedy sought here is in equity. As a predicate to equitable relief, a party must exercise reasonable efforts to discharge his own obligations.[3] The burden of convincing the trial court that they had done so rested upon the plaintiffs. In analyzing the over-all equities between these parties, the trial court could also consider the proposition that, as a practical matter, the contract as written did not actually bind the plaintiffs since they were protected by the limiting phrase "sale subject to buyer obtaining financing," thus allowing them to effectively avoid performance by simply failing or refusing to cooperate in obtaining financing.

■ Though there appears to be conflict as to where the fault lay—whether upon the defendants for not proceeding with the

1. See *Anaheim Company v. Holcombe*, 246 Or. 541, 426 P.2d 743 (1967); *Lach v. Cahill*, 138 Conn. 418, 85 A.2d 481 (1951).

2. Id.

3. See *Fischer v. Johnson*, Utah, 525 P.2d 45 (1974), and authority cited therein.

completion of the home more rapidly, or upon the plaintiffs for failing to obtain financing to purchase it—there appears to be a reasonable basis in the evidence to justify the trial court in remaining unconvinced that the plaintiffs had sufficiently performed their obligations under the contract to justify mandating specific performance by the defendants. We are similarly unpersuaded that the evidence so clearly preponderates against the findings and determination made by the trial court that we would be justified in overturning them.[4]

■ Though the foregoing sufficiently disposes of plaintiffs' attack upon the judgment, they assign two further matters of error upon which we comment. The first is in the court's sustaining objections to questions put to Mr. Bradford about his conversation with the real estate agent, Mr. Herzog. In regard to the controversial clause in the contract requiring the plaintiffs to obtain financing, plaintiff's counsel asked Mr. Bradford:

Q. How did that [clause] come to be placed in the agreement?

A. Mike Herzog told us that ...

Defendant's counsel objected to the witness relating what Mr. Herzog said, which objection was sustained. Later in his testimony, Mr. Bradford was asked:

Q. Did you ever get a loan commitment from American Home Mortgage?

A. No. We did not.

Q. Why not?

A. We were told at the pre-qualification . . .

Defendant's counsel again objected to Mr. Bradford relating what had been told him at that conference.

Concerning these alleged errors in ruling on evidence, the following observations are pertinent. The first and insuperable obstacle to plaintiffs' contention is that they did not make any offer of proof as to what evidence would be adduced, nor the purpose it would serve, as required by Rule 5, Utah Rules of Evidence.[5] In the absence of any such showing in the record, we are not concerned with the further controversy about this evidence: that there was no foundation laid to show that any statements Mr. Herzog may have made were excludable as an attempt to contradict the terms of the written contract, and whether within the scope of any authority he had to act for defendant Alvey in that regard. The capstone of all of the foregoing is that it does not appear that even if statements of Mr. Herzog had been admitted, there is any reasonable likelihood that there would have been a different result at the trial.[6]

■ Plaintiffs' final contention is that the trial judge erred by not granting their motion for leave to amend their pleadings to include the claim that the defendants should be estopped from denying the existence of an enforceable contract. This argument is based on Rule 15(b) of the Utah Rules of Civil Procedure, which provides that:

4. This Court has stated that it will not upset the trial court's findings and conclusions in an equity case unless the evidence clearly preponderates against it. See *Nokes v. Continental Mining & Milling Co.*, 6 Utah 2d 177, 308 P.2d 954 (1957); *Timpanogos Highlands, Inc. v. Harper*, Utah, 544 P.2d 481 (1975).

5. Rule 5 of the Utah Rules of Evidence states that:

A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless (a) it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions

indicating the desired answers, and (b) the court which passes upon the effect of the error or errors is of the opinion that the excluded evidence would probably have had a substantial influence in bringing about a different verdict or finding.

Also, see Rule 43(c) of the Utah Rules of Civil Procedure. And see statement in *Downey State Bank v. Major-Blakeney Corp.*, Utah, 578 P.2d 1286 (1978).

6. That a judgment will not be reversed because of the exclusion of evidence unless it appears that there is a likelihood of a different result, see Rule 4, Utah Rules of Evidence; and that this rule applies to errors generally, see *Eager v. Willis*, 17 Utah 2d 314, 410 P.2d 1003 (1966).

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment;

\* \* \* \* \* \*

 Such an amendment should be allowed by the court only when it will serve the purpose of the rule, which is to further the interests of justice. Although there was some evidence introduced for other purposes which might be relevant to an estoppel argument, we find no indication that estoppel was tried by either the express or implied consent of the parties. More importantly, there is nothing in the record, nor in the facts as viewed by the trial court, which would provided a basis upon which the defendants should be estopped from denying that the contract is binding upon them. Affirmed. Costs to defendants (respondents).

WILKINS, HALL and STEWART, JJ., and TUCKETT, Retired Justice, concur.

MAUGHAN, J., does not participate.