John F. HILL, Plaintiff and Respondent,

v.

Dale HARTOG, James C. Hartog, and David B. Roberts, Defendants and Appellant.

No. 17933.

Supreme Court of Utah.

Feb. 9, 1983.

Robert Neeley, Ogden, Merrill G. Hansen, Craig P. Orrock, Salt Lake City, for defendants and appellant.

C.C. Patterson, Bruce R. Baird, Ogden, for plaintiff and respondent.

**OAKS, Justice:**

In this lessor's action for default in the payment of rent on a lease agreement, the district court entered a judgment on a special verdict against defendants for $20,000. Only defendant Roberts appeals, seeking reversal or a new trial because the district court excluded the testimony of his codefendants as to (1) whether or not the lease instrument was final and binding, and (2) whether appellant was a lessee or merely a guarantor of the lease.

Respondent owned real property in Layton, Utah. He was approached by defendant Dale Hartog and representatives of Tunex regarding the construction and lease of a building on his property in which Dale Hartog wanted to operate a Tunex franchise. On October 8, 1976, a document (apparently provided by Tunex) entitled "Proposed Lease" was executed by respondent as "landlord" and by defendants Dale Hartog, his father James Hartog, and his brother-in-law David B. Roberts (appellant) as "tenants." The lease term was twenty years. Rent was $917 per month. (A provision for two percent annual increases was subsequently waived by the respondent lessor.)[1] Respondent expended $60,000 to construct a building in accordance with Tunex specifications, and defendant Dale Hartog began operating his business in January, 1977.

The business failed to make a profit, and defendants became delinquent in the rent payments after May, 1980. In October, 1980, defendant Dale Hartog surrendered the premises to respondent. In December, 1980, respondent filed a complaint against all three defendants, alleging breach of the lease and praying for damages of $7,338 for delinquent rent and $172,800 for prospective rent under the lease provisions. Appellant Roberts answered separately, denying that he had executed the lease, denying that he was liable under its terms for any rent, and moving to dismiss the complaint for failure to state a claim upon which relief could be granted.

---

1. A few days later, each defendant signed a personal and unconditional guarantee of the lessees' performance. The plaintiff lessor brought no action on these guarantees, and they were not in issue at trial.

In the order which resulted from a pretrial conference, the court found, upon a stipulation by respondent and defendants Hartog, that these parties had executed the lease and that it was "in fact breached for failure to pay rent and by abandonment of leasehold property." The court further found that between respondent and the defendants Hartog the only issue to be tried was the amount of damages respondent sustained as a result of the breach. Since appellant denied having executed the lease and denied any cause of action as to him, the district court certified two questions for trial: (1) whether appellant in fact executed the lease, and (2) whether he was liable for any of the damages sustained by plaintiff. In its special verdict, the jury found that the lease was valid, that all three defendants had signed it as lessees, and that respondent was entitled to $20,000 in damages.

■ 1. Appellant's main contention at trial was that the document titled "Proposed Lease" was never more than a preliminary document without legal force. The district court refused to permit appellant's codefendants to testify as to their understanding of whether the executed document was a final agreement. Appellant argues that as to him, the issue of the validity of the lease had been preserved at pretrial, and that the exclusion of this testimony was erroneous and prejudiced him by leaving his own testimony uncorroborated.

The trial court's exclusion of the Hartogs' testimony concerning the finality of the lease was error. Earlier in the trial proceedings, outside the presence of the jury, the district court had ruled that because of their pretrial stipulation, the Hartogs would not be allowed to present evidence challenging the validity of the lease, but that "Mr. Roberts, of course, has the issue open," and would be permitted "to look into that question."

■ Evidence which is incompetent as to one party or for one purpose cannot be excluded if it is admissible as to another party or for another purpose. *State v. Cooper,* 114 Utah 531, 538, 201 P.2d 764, 768 (1949); *Sine v. Harper,* 118 Utah 415, 423–24, 222 P.2d 571, 576 (1950); *Hockett v. Salem Private Schools,* 279 Or. 453, 455–56, 568 P.2d 663, 664 (1977); 29 Am.Jur.2d *Evidence* §§ 262–63 (1967). To avoid prejudice to codefendants or confusion of the jury in such instances, our rules require the court, on request, to "restrict the evidence to its proper scope and instruct the jury accordingly." Utah R.Evid. 6; 75 Am.Jur.2d *Trial* §§ 171–72 (1974). Hence, while the Hartogs could not have testified to the finality of the lease as to themselves, their testimony on this issue was admissible for the limited purpose of corroborating appellant's contention that, as to him, the lease instrument was not final and binding. The exclusion of this evidence was error.[2]

■ However, the error was not prejudicial. Erroneous exclusion of evidence is not grounds for reversal unless it appears that "the excluded evidence would probably have had a substantial influence in bringing about a different verdict or finding." Utah R.Evid. 5; *Bradford v. Alvey & Sons,* Utah, 621 P.2d 1240, 1243 (1980); *Downey State Bank v. Major-Blakeney Corp.,* Utah, 578 P.2d 1286, 1288 (1978); *Gray v. Gray,* Okl., 459 P.2d 181, 186 (1969). Appellant has not shown that probability in this case.

Appellant sought to prove that the lease was not final as to him because he never received various attachments the lease specified be provided before it became effective. The failure to provide appellant with these attachments (*e.g.,* blueprints, a survey of the property, and confirmation of financing and building permits) was uncontested. Respondent admitted in his testimony that although he had supplied all these attachments to defendant Dale Hartog, who conducted the lease negotiations and ran the business, he had never given them to appellant or attached them to appellant's copy of the lease. Hence, any testimony appellant sought to elicit from his codefendants on

---

2. This conclusion makes it unnecessary to address appellant's alternative ground that the evidence should have been admitted because only a general objection was made at trial.

this subject would have been merely cumulative. *Stevens v. Memmott,* 9 Utah 2d 37, 40, 337 P.2d 418, 420 (1959); *Taylor v. Mazzola,* 150 Colo. 553, 375 P.2d 96 (1962).

In this case, the jury heard appellant's testimony that he considered the lease instrument to be no more than a preliminary agreement—a starting point or "letter of intent"—because he had never received the lease attachments. To the opposite effect, the jury heard other competent evidence that appellant read the document and signed it in the space entitled "tenants," that he had previously executed another Tunex lease which was substantially similar to the one challenged here, that appellant was aware that building construction began in November, 1977, and that the business began operating in January, 1977, and operated until sometime in 1980. There was also evidence that shortly after the business commenced appellant spoke with respondent at an open house. Appellant was notified of the delinquency in rent payments in the spring or summer of 1980. Although he had four years and ample opportunities to do so, appellant admitted that he had never requested that a final lease be executed or inquired of respondent or his codefendants as to the missing attachments or challenged the final and binding quality of the lease instrument until after respondent filed suit in November of 1980. *Cf. Edwards' Pet Supply v. Bentley,* Utah, 652 P.2d 889 (1982).

Viewing the evidence in the light most favorable to the jury verdict, we cannot say there is a reasonable likelihood that a different result would have followed from permitting the jury to consider the testimony of the defendants Hartog as to their understanding of the final and binding character of the lease instrument. *Bradford v. Alvey & Sons, supra.* The exclusion of their testimony was not prejudicial error.

■ 2. Appellant next contends that the district court erred in excluding his codefendants' testimony as to whether he executed the lease as a lessee (principal obligor) or only as, in effect, a guarantor for the other two lessees. The excluded question, propounded to each of his codefendants, was: "At the time you signed [the lease] agreement, was it your understanding that that was going to be a final agreement?" On its face, this question contains no terms to elicit evidence bearing on whether appellant was a lessee or a guarantor. Moreover, to preserve this issue on appeal, appellant had to make an offer of proof on the record as to what evidence he intended to adduce by his questions, Utah R.Civ.P. 43(c); Utah R.Evid. 5; *Bradford v. Alvey & Sons, supra; Downey State Bank v. Major-Blakeney Corp., supra;* 75 Am. Jur.2d *Trial* § 128 (1974), or to propound further questions more explicitly pertinent to the issue. *Scott v. Scott,* 19 Utah 2d 267, 270, 430 P.2d 580, 582 (1967); *McElwain v. Schuckert,* 13 Ariz.App. 468, 470–71, 477 P.2d 754, 756–57 (1970). Since neither was done, we have no basis for a reversal on this issue.

The judgment is affirmed. Costs to respondent.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.