308 P.2d 954

Andrew G. NOKES, Plaintiff and Respondent,

v.

CONTINENTAL MINING & MILLING CO., a corporation, E. G. Frawley, President, John Doe, Secretary, Glen I. Crandall, Transfer Agent, Defendants and Appellants.

No. 8501.

Supreme Court of Utah.

April 1, 1957.

Gustin, Richards & Mattsson, Fred H. Evans, Salt Lake City, for appellants.

Irving H. Biele, Salt Lake City, for respondent.

CROCKETT, Justice.

Andrew G. Nokes was granted judgment that he owned 100,000 shares of stock in Continental Mining & Milling Company. Defendants appeal.

The controlling question is one of fact: Was Mr. Nokes a bona fide purchaser for value.

■■ This being a case in equity, it is our responsibility to review the evidence.[3] In doing so it is well to have in mind the general pattern as to the scope of such review as set out in prior adjudications in this court. Where there is a conflict in the evidence, the finding of the trial court will not be disturbed if the evidence preponderates in favor of the finding; nor, if the evidence thereon is evenly balanced or it is doubtful where the preponderance lies; nor, even if its weight is slightly against the finding of the trial court, but it will be

3. Utah Const. Art. VIII, Sec. 9, providing for appeals " * * * In equity cases the appeal may be on questions of both law and fact; * * * ".

overturned and another finding made only if the evidence clearly preponderates against his finding.[4]

The rule just stated is based upon the sound reasoning that some credit should be indulged in favor of the findings of the trial court because of the advantages peculiar to his position in immediate contract with the trial. It is indeed often true that, "the manner hath more eloquence than naked words portend." There are intangibles of expression and attitude which give color and meaning not apparent from words alone. The trial judge feels the impact of the personalities of the parties and the witnesses: He is able to observe their appearance and behavior; their forthrightness or hesitancy in answering; their frankness and candor, or lack of it. Similarly revealing to him are indications of surprise, anger, resentment or vindictiveness, pleasure or other emotions which may be discerned from expressions of the countenance or voice. He also has some advantage in appraising their abilities to understand and their capacities to remember. Furthermore, he is in a position to question the witness himself to clarify doubtful points or verify his impressions on the matters just mentioned. All of this combines to afford him better insight as to the truthfulness of the testimony offered than does a perusal of the cold record. It is a sound and well recognized policy of the law to repose some confidence in the verity of the actions of the trial court, and not to interfere with them unless it clearly appears that he is in error.[5]

Continental, was organized as a subsidiary to Consolidated Uranium Mines. The stock in question was promotion stock issued to Lawrence and Marie O. Migliaccio on February 8, 1950, and placed in escrow with the Utah State Securities Commission. Dispute arose between the Migliaccios and defendant, E. G. Frawley (President of both Continental and Consolidated). Since then there has been constant strife and litigation between them. Both claimed the stock and demanded it from the Commission through their counsel, Thomas C. Cuthbert and John H. Lowe for the Migliaccios, and Fred H. Evans, for the defendant. The matter was resolved by an opinion from the attorney general directing that the certificate be surrendered to the Migliaccios. This was done on June 7, 1954, in the presence of the said attorneys for both parties. Mr. Evans announced that suit for the stock would be commenced immediately.

In accordance with Mr. Evans' statement, on June 11, 1954, four days after the release of the stock to the Migliaccios, a suit was filed in the Federal Court. It was five

4. Stanley v. Stanley, 97 Utah 520, 94 P. 2d 465; Gibbons v. Brimm, 119 Utah 621, 230 P.2d 983.

5. See Burton v. Zions Co-op. Mercantile Inst., Utah, 249 P.2d 514.

days thereafter, on June 16, 1954, and before any summons had been served on the Migliaccios that they sold the stock to plaintiff for $500 in cash as related below and endorsed the certificate to him.

Plaintiff's evidence was that he was a resident of Kansas; that he had been a friend and schoolmate of Mr. Cuthbert, and that in connection with law business in which he was a witness for his employer he went to the law offices of Cuthbert and Lowe, who were handling the case. In conversation he mentioned that uranium stocks were very active and he would like to make a good investment for which purpose he had $500. Cuthbert went into another office for a few minutes and returned. He then advised Nokes that for $500 he could buy 100,000 shares of Continental; that it had a much higher book value, but was not being sold or traded on the market. He recommended that Nokes buy it, assuring him that it would be a good speculation for him, and directed him where he could find Migliaccio.

Plaintiff Nokes went to Migliaccio and purchased the stock for $500. He returned to Cuthbert and Lowe's office with the certificate and they directed him to Mr. Frawley, where he went and requested transfer of the stock. This Mr. Frawley refused and was very much upset about the transaction, which is not difficult to understand. He seems to have overdone it however, because in his wrath he called names and abused the parties concerned, including Mr. Nokes for good measure. Nokes again returned to the offices of Cuthbert and Lowe and reported the trouble, whereupon they disclosed to him the facts above recited, including that the attorney general and the Utah Securities Commission had ruled that the Migliaccios owned the stock, but that Frawley contested this and threatened a law suit concerning it. As an aside one may conjecture that if Nokes had any hesitancy at this point as to whether to attempt to retrieve his $500 from Migliaccio or to proceed against Frawley, it is likely that the abuse he had just taken from Mr. Frawley did not help the latter's cause any. Cuthbert and Lowe advised Nokes that they could not represent him but he would have to obtain other counsel. He then made formal demand of Mr. Frawley for transfer of the stock and engaged his present counsel, Irving H. Biele, to prosecute this action.

It is defendant's position that the finding of the trial court that the plaintiff Nokes was an innocent purchaser for value is so contrary to the weight of the evidence, that under the rules of review in equity hereinabove enunciated, it cannot stand. Its argument is that notwithstanding the testimony of the plaintiff and his witnesses, Cuthbert and Lowe, the surrounding circumstances so strongly indicate that the transaction was a machination among them, and their testimony is so suffused with self-

interest, that the court could not properly make any other finding than that he had notice of the defendant's adverse claims to the stock.

To provide a basis for critical comparison we set forth the matters which seem to have a significant bearing on whether the finding of the trial court that Nokes was an innocent purchaser should be sustained.

Casting doubt upon his findings, these points are urged:

1. Lowe and Cuthbert were attorneys who knew of the adverse claims to the stock in question, and it would seem should have revealed these facts to the purchaser, Nokes.

2. They were also friends of Nokes. Particularly Cuthbert, who had been his schoolmate, and who admitted regarding him in a relationship of trust and confidence, might be considered as doing Nokes an unconscionable disservice by advising him to buy stock which was encumbered with adverse claims and a potential lawsuit without telling him the full facts.

3. The testimony of each of these three parties was suffused with a high degree of self-interest, and therefore should be disbelieved.

On the other hand, the following considerations argue that the finding that Nokes was an innocent purchaser should stand:

1. Nokes, Lowe and Cuthbert so testified.

2. The trial court had the prerogative of believing the witnesses if he chose to do so.

3. Inasmuch as these parties (except Nokes) had been feuding, it does not seem so unlikely that Cuthbert, being a lawyer, may well have known that if Nokes did purchase the stock as an innocent purchaser, he would be in a good position to assert rights against the corporation, and for that reason may have carefully avoided advising Nokes anything about any adverse claims and likewise may have warned Migliaccio not to do so. He could have done this realizing just as he stated: that it was a pretty good speculation for Nokes.

4. Cuthbert also stated that because of the animosity between Frawley and Migliaccio, he thought that if someone else got hold of the stock, they might work out some amicable settlement, which likewise does not seem unreasonable.

5. If Lowe, Cuthbert and Nokes had actually fabricated a transaction, with Nokes having full knowledge of all of the facts, they likely could have done a much better job of getting an innocent purchaser to buy this stock, rather than to have handled such a transaction in their own office, with the possibility that if the matter went to court, they would be subjected to cross examination and be required to commit perjury if the plan were to succeed.

182

The trial court chose to believe the plaintiff's evidence, and in view of the foregoing analysis, we cannot say that the evidence preponderated against his finding. It does not seem unreasonable for him to have believed that Cuthbert deliberately avoided telling Nokes of any difficulties regarding the title to the stock, and that during his absence from the office he phoned and warned Migliaccio not to do so for the very purpose of keeping Nokes in a position of being an innocent purchaser, should he purchase the stock. Whether this be censurable of Cuthbert, or what the moral or equitable considerations existing between Migliaccio and Frawley are, we are not called upon to say, nor was it the concern of the trial court. It is likely that a good deal could be said on both sides of that controversy, with which we are fortunately not here concerned. There is no doubt that extraordinary animus existed in the feud between them. Asked if that were not so, Cuthbert testified that, "It could not have been worse; they threatened to kill each other." Nor are we here concerned with the question of the actual value of stock in a corporation where such dissension exists.

Affirmed. Costs to respondent. (Plaintiff.)

McDONOUGH, C. J., concurs.

WORTHEN and HENRIOD, JJ., concur in the result.

WADE, J., does not participate herein.

