361 P.2d 174

STATE of Utah, Plaintiff and
Respondent,

v.

Ruben B. SANCHEZ, Defendant and
Appellant.

No. 9298.

Supreme Court of Utah.

April 19, 1961.

Thomas P. Vuyk, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Gordon A. Madsen, Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

Defendant appeals from conviction of the statutory offense of having intercourse

1. 76-53-15, U.C.A.1953.

with a 10-year old girl,[1] whom we refer to as Beverly, in her home in Ogden in July, 1959.

The errors assigned relate to claimed improper admission of evidence. Through counsel on appeal, who did not represent him at the trial, defendant concedes that no proper objections were made to some of the testimony in question. Under those circumstances, giving consideration to such matters on appeal is done rarely and with caution in an awareness of the importance of the requirement for timely objections. This serves to safeguard correct rulings when made; and to prevent any deliberate delay in making objections to later take advantage of errors committed. However, so long as these factors are given due consideration, we do not disagree with the defendant's contention that in serious criminal cases, under special circumstances, where the interests of justice so require, this court may notice palpable and significant error even though proper objections were not taken at the trial.[2]

The evidence is that on several occasions during July, 1959, the defendant, alone and with others, went to Beverly's home while her mother was away; that the doors were locked, and that he had intercourse with her; that he would warn her not to tell.

2. See State v. Cobo, 90 Utah 89, 60 P.2d 952.

She did not do so until in November, after she had been placed in a foster home, she disclosed these facts to her foster mother. This prompted the investigation leading to this prosecution.

The chief point of attack against the State's case is upon the testimony of Beverly: that she was not shown to be qualified to give credible testimony and should not have been permitted to testify. This is based upon her answers given on voir dire examination and the fact that she appeared to have some difficulty in understanding some of the questions later asked of her. When asked if she knew what it meant to tell the truth she answered: "It's to don't lie." And when asked if she knew what would happen if she did not tell the truth, she first answered, "No." But on further questioning said she had been to Sunday school and had been taught to tell the truth and not to lie; and she promised to tell the truth. Her responses might be viewed by some as not entirely satisfactory, but in spite of any deficiencies it can fairly be said that they showed a knowledge that it was a good and proper thing to tell the truth and bad to lie.

In determining whether a child should be allowed to give testimony the court is obliged to bear in mind these principles: generally it is proper to assume that a child of 10 years, as Beverly was, is qualified as a witness and should be permitted to testify unless something appears to indicate to the contrary. Age is, of course, not the sole criterion, but is to be considered along with other factors relating to the quality of evidence the witness can give. Allowance must be made for the difference in capacities of individuals and no particular age or degree of mental ability can be set as a rigid standard. What is essential is that it appear that the child have sufficient intelligence that she understands the questions put to her; has some knowledge of the facts they relate to; that she shows some aptitude in remembering and relating pertinent facts; and that she has a sense of moral duty to tell the truth.

Because of the position of the judge in proximity to the trial and the witnesses he is in an advantaged position to pass on these matters,[3] and the question whether a child is qualified to be a witness must be left largely to his judgment. If on the basis of the factors just recited he is satisfied that the child can give credible evidence, as he appears to have been in this case, it is proper to permit her to testify and his ruling will not be disturbed unless it plainly appears that he abused his discretion. There is nothing

3. As to advantage of trial court's position see statement in Nokes v. Continental Mining & Milling Co., 6 Utah 2d 177, 308 P.2d 954.

shown to convince us that he did so in this instance.

█ A further assignment of error in regard to Beverly's testimony is that she was improperly allowed to state that while she was in the bedroom with the defendant, some other men, whom she could not name, who had come to the house with the defendant were in another room taking turns committing a similar offense with her sister. Her knowledge of the facts concerning these men coming to the house and their activities at the time arose directly out of her immediate involvement in the whole set of circumstances attendant upon the commission of the offense and in which the defendant and his criminal conduct was also involved. Neither the fact that this evidence cast the defendant and his comrades in a bad light, nor that it reveals the commission of other offenses, makes it necessary to exclude evidence which is material to show all relevant facts surrounding the commission of the offense charged.[4]

█ Defendant also advances a contention that testimony presented through police captain August Nussbaum as to defendant's statements about the latter's association with Beverly's mother and visiting the home were irrelevant and immaterial. In response to Mr. Nussbaum's questions, the defendant, Sanchez, first denied any knowledge of Beverly, her mother, or their home. But upon further questioning he admitted that he did know them; and that he had been on parties with the mother and had been at the home a number of times. This evidence showing that upon being confronted with inquiry about this crime he first was defensive and evasive by making denials, and later made admissions of the truth inconsistent with them, was competent evidence because it reasonably could be regarded as manifesting an awareness of guilt and a desire to protect himself by falsifying to mislead the officers in the investigation.[5]

█ The final assignment as to improper admission of evidence relates to that given by Dr. J. W. McIntyre, who examined Beverly shortly after she made known the facts concerning defendant's conduct. The doctor stated that her hymen was ruptured and that she was capable of having intercourse with an adult, but there was no

---

4. See State v. Shockley, 29 Utah 25, 80 P. 865, where evidence of another shooting in the same general affray by defendant was allowed to show the circumstances surrounding the murder with which defendant was charged.

5. See Commonwealth v. Karmendi, 328 Pa. 321, 195 A. 62; 1 Wharton's Criminal Evidence, (12th Ed.) Sec. 143.

evidence of bruising or violence. It is asserted that the examination was so remote in time as to have no relevancy to prove the act charged. This contention misconceives the purpose of the testimony. It was neither claimed nor suggested that the doctor's testimony constituted any proof of violence, which is not an essential to this statutory crime. The physiology concerning the unruptured hymen is so well known that it was proper for the prosecutor to put in this evidence solely for the purpose of showing that it was possible that the girl had had intercourse; and that was all that was claimed for it.

Affirmed.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, Justice (concurring).

I concur in the result, but see no reason for discussing the Cobo [1] case. The main opinion in effect says that irrespective of failure to object, the evidence claimed to have been inadmissible *was* admissible, and any question of failure to object, therefore, is not even pertinent to this case or our decision.

1.  90 Utah 89, 60 P.2d 952, 958, where it was said the appellate court could note and consider unobjected to trial court level matters, in "capital offenses or oth-

er grave and serious offenses of long * * * imprisonment," which matters have been injected as a result of "palpable error."