401 P.2d 445

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Carlyle A. SMITH, Defendant and Appellant.**

**No. 10294.**

Supreme Court of Utah.

April 29, 1965.

Frank B. Hanson, Price, for appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for respondent.

1. Sec. 76–7–9, U.C.A.1953.
2. State v. Sanchez, 11 Utah 2d 429, 361 P.2d 174 (1961).

CROCKETT, Justice.

Defendant appeals from conviction of the statutory offense of assaulting and taking indecent liberties upon a child under the age of 14 years[1] in the bedroom of his home at Blanding, Utah.

The errors assigned relate to claimed improper admission of evidence, insufficiency of the evidence, and prejudicial comment and explanation by the court relating to the jury instructions. Defendant's counsel, who did not represent him at the trial, concedes the absence of objections in connection with some of the errors claimed. He urges the prerogative, which we recognize, of noticing palpable and significant error which may have deprived an accused of a fair trial, under special circumstances where the interests of justice so require, even in the absence of such objections.[2] However, we emphasize that this is done rarely and with caution in an awareness of the importance of timely and proper objections.[3] The purpose of this is to call attention to rulings claimed to be erroneous at a time when they may be corrected; and also to guard against any deliberate withholding of objections with an ulterior purpose in

3. See, e. g., State v. Tuttle, 16 Utah 2d 288, 399 P.2d 580 (1965).

mind of later taking advantage of errors committed.[4]

The evidence is that the defendant, a 70-year-old man, talked to the victim, L_____, a six-year-old girl, in the town drugstore; that he asked her if she would like to come over to his house and promised her some candy; that the child asked and got permission from her mother to go over for a few minutes; that when she did so, the defendant took her into his bedroom, got her to take off her panties, and played with her privates; asked her to touch his and engaged in certain nonviolent indecencies, the exact detail of which can be spared here.

Meanwhile, L_____'s mother became concerned when she was gone too long and went searching for her. She knocked on the defendant's door, and when no one answered, twisted the knob and found it locked. She went to a nearby window and saw the defendant and L_____ on the bed. She ran to her car, began honking continuously and had another child pound on the defendant's door. The child came out of the house, got in the car, and as they drove, told her mother what had happened. She dropped L_____ off at home and went back to the defendant's house, but he denied having molested the child. That evening the mother talked the situation over with her husband, and the next day he filed this complaint.

The defendant's principal attack upon the State's case is that the testimony of the six-year-old victim is incompetent, and that inasmuch as critical aspects of the case rest upon it, there is not a sufficiently substantial basis in the evidence to support the conviction. That the basing of a conviction on such a charge upon the testimony of so young a child poses a serious problem is not to be denied. Two alternative hazards are confronted. On the one hand, in accepting the testimony of the child there is the danger that she may not be telling the truth, in which event an innocent man may be convicted of crime and suffer the consequences thereof. On the other, if the child's testimony is not accepted, a man guilty of crime, and possibly with the potential for more such, will go free. In this connection, it must be borne in mind that when such an offense is committed, it is done with the greatest possible stealth and secrecy, so that most often the testimony of the victim, coupled with the type of corroboration we have here, is the only evidence available upon which to determine guilt or innocence. The fact that there are difficulties involved should not prevent the processes of justice from functioning.[5] The resolution of disputes is the purpose for which courts and juries exist,

---

4. See Sec. 77–37–1, U.C.A.1953 and Rule 51, U.R.C.P.

5. Cf. statement in Samms v. Eccles. 11 Utah 2d 289, 358 P.2d 344, 347.

and they must perform their duties in spite of such difficulties. Both trial judges and jurors are aware of the various considerations involved in such a situation. For these reasons they invariably approach cases of this character with caution as the trial court appropriately instructed the jury here.

█ The testimony of a six-year-old child is not rendered completely incompetent nor entirely discredited solely because of her age. As we have previously observed, no particular age nor any specific standard of mental ability can be set as the qualification for giving testimony, but it is an important factor to be considered, along with others, in determining whether she should be allowed to testify. What is essential is that it appear that the child has sufficient intelligence and maturity that she is able to understand the questions put to her; that she has some knowledge of the subject under inquiry and the facts involved therein; that she is able to remember what happened; and that she has a sense of moral duty to tell the truth.[6] Whether she meets these tests and is therefore a competent witness is within the sound discretion of the trial court to determine. His ruling will not be disturbed in

the absence of a clear showing of abuse.[7] We find no such indication here. After the trial court is satisfied with the competency of the witness, the final judgment as to the credibility and weight to be given her testimony is for the jury.[8]

█ The errors claimed in the court's comments in explanation of the instructions arise out of his answers to questions by jurors when they returned to the courtroom after they had retired to deliberate. The questions related to the meaning of the term "assault." The court had submitted the crime of simple assault as an included offense in the principal crime charged and as an alternative verdict.[9] In defining it, he used the statutory language that, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another." The jurors, quite understandably, appeared to have been confused by this definition, being under the impression that the term "violent injury" means a physical impact sufficient to cause some substantial and noticeable injury. Without detailing the somewhat extended discussion, it is sufficient to say that the court correctly disabused their minds of the impression that any such aggravated assault was neces-

6. See State v. Sanchez, supra note 3; II Wigmore, Evidence, § 495 (3d ed. 1940).

7. See State v. Sanchez, supra note 3.

8. For statement as to advantages of jury in judging credibility, see Nokes v. Con-

tinental Mining & Milling Co., 6 Utah 2d 177, 308 P.2d 954.

9. State v. Waid, 92 Utah 297, 67 P.2d 647 (1937); see People v. Gibson, 232 N.Y. 458, 134 N.E. 531, 532 (1922); 1 Wharton, Criminal Law & Procedure, § 343, at 690 n. 16 (Anderson ed. 1957).

sary, and we perceive no error in what was said. It is significant to observe that at the conclusion of the discussion the court asked counsel, "Do you want to take exception to anything the Court has said?" and counsel made no objection.

Finding no error prejudicial to the defendant which would have deprived him of a fair trial, the conviction is affirmed.

HENRIOD, C. J., and McDONOUGH, WADE, and CALLISTER, JJ., concur.