446 P.2d 954

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Val TAYLOR, Defendant and Appellant.**

**No. 11052.**

Supreme Court of Utah.

Nov. 8, 1968.

Nolan J. Olsen, Midvale, for appellant.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice:

Defendant appeals from his conviction by the Juvenile Court of contributing to the delinquency of a minor, contrary to the provisions of Sec. 55–10–80, U.C.A.1953. It was alleged that he took indecent liberties with S and C, daughters of his wife by a prior marriage, whose ages were seven and six respectively.

■ It seems mundane to state that an accused, under our system of justice, shall not be found guilty unless his guilt, after a fair and impartial trial, is proved beyond a reasonable doubt. However, in the instant case we are faced with this basic proposition. A review of the record convinces this court that the defendant was not afforded a fair trial nor proven guilty beyond a reasonable doubt.

Defendant was convicted almost entirely upon the unsworn testimony of the two infant girls and the testimony of their grandmother (who had an animosity toward defendant) as to what the young girls had told her quite some time after the alleged incident. It was the grandmother who reported the matter to the police.

It would serve no useful purpose to relate the details of the alleged offense. Nor would it serve any useful purpose to detail all of the errors which were committed during the course of the trial. Suffice it to abbreviate the following as necessitating a reversal of defendant's conviction:

■ The two girls were not adequately qualified as witnesses. Their awareness as to the difference between right and wrong and understanding of telling the truth as against a lie was not sufficiently established. In other words, their competency to testify was not established.[1] It does not appear from the record that an appropriate objection was made to the witnesses' competency.[2] A survey of the record casts grave doubt upon the ability of S to understand questions without a cue from the prosecutor as to the desired responses. For example:

Q. [by prosecutor] * * * But you won't lie here today. Is that right? You know this is very important that you don't lie don't you? Tell the whole truth today and not add anything to it. Say the answer. No. *Say I won't.* [Emphasis added.]

1. In State v. Smith, 16 Utah 2d 374, 401 P.2d 445 (1965), this court stated: "* * * What is essential is that it appear that the child has sufficient intelligence and maturity that she is able to understand the questions put to her; that she has some knowledge of the subject under inquiry and the facts involved therein; that she is able to remember what happened; and that she has a sense of moral duty to tell the truth. * * *"

2. However, in this regard, see: State v. Cobo, 90 Utah 89, 60 P.2d 952 (1936); State v. Sanchez, 11 Utah 2d 429, 361 P.2d 174 (1961); State v. Smith, footnote 1, supra.

A. I won't.

When the defense attorney interrogated S, he asked:

Q. Do you know what a lie is, S?

A. No.

During the direct examination of the younger child, C, the prosecutor instructed her response seven times, in addition, to his obvious cues to elicit the desired answers.

A careful survey of the record compels one to conclude that the older child had no independent recollection of the matter from her responses to the questions. If one deletes her answers to leading questions which contained obvious cues as to the desired response, her testimony is limited to "I don't know," and "I don't remember." Furthermore, from the extremely limited testimony on the subject matter, there emerges a serious doubt as to whether the children had any sense of moral duty to tell the truth. The sole sanction with which they were familiar for relating a falsehood was a reprimand by their stepfather, the defendant, with whom they no longer lived.

■ Another factor which compels this court to grant a new trial is the apparent ground of the trial court for sustaining the prosecution's objection to the defense's request to recall the little girls. The prosecution argued that the defense should be denied the right of recall, after certain discrepancies appeared following the testimony of the mother and grandmother, because the defendant could explain many of these matters, and as long as he persisted in asserting his constitutional right not to testify, the children should not be recalled.

■ There is one other aspect of this case which bears exploration. The criminal jurisdiction of the juvenile court is confined to the provisions in Sec. 55–10–80, U.C.A.1953, amended 1965, which concern offenses against children by adults. Such offenses are classified as misdemeanors. Sec. 55–10–81 provides that in proceedings in adult cases, the juvenile court shall conform to the practice and procedure for criminal proceedings in the district court. Since the instant case falls within these provisions, the prosecution had the burden of proving defendant's guilt beyond a reasonable doubt.

The prosecution in its closing statement argued:

* * * I feel that the State has sustained its burden and that the evidence does show we had a reasonable doubt that these particular acts could take place. * * * Now as to the exact allegations, I feel that the State has sustained its burden and I would hope that the Court in the best interest of the defendant, as well as on the basis of the evidence, that he be found guilty of this charge.

■ After a careful evaluation of the evidence, it appears that the court used the

usual standard of juvenile court procedure, as suggested by the prosecutor, that it would be in the best interest of defendant to be found guilty. The thrust of the prosecutor's argument was that the overall attitude of defendant had made reconciliation with his wife difficult, and " * * * if he does know these things are true, regardless of the disposition of the Court, he should consider making a breast of these things and attempting to get back together with his wife. * * * " (One must query why, if the prosection were convinced that the evidence against defendant indicated his guilt beyond a reasonable doubt, it considered a reconciliation of a mother with five children with a pervert a desirable objective.)

In the instant action, the court appears to have rendered its verdict based upon a desire to alter the attitude of defendant and effect a reconciliation with his wife rather than upon a finding of guilty beyond a reasonable doubt.[3]

The entire transcript of this trial is replete with errors; defendant was deprived of even a facsimile of a fair trial. We recognize that the forum before which this matter was tried was relatively unfamiliar with criminal procedure, but since the legislature, in its wisdom, has granted criminal jurisdiction to the juvenile courts, they must conform to the standards of criminal justice.

Reversed and remanded for a new trial.

TUCKETT and HENRIOD, JJ., concur.

CROCKETT, Chief Justice (dissenting).

I dissent.

From my review of this record it is my judgment: (1) that there is ample credible evidence to support the finding of defendant's guilt beyond a reasonable doubt; (2) the defendant's rights were properly and adequately safeguarded; (3) that there was no error which by itself or cumulatively should be regarded as sufficiently substantial and prejudicial to warrant a reversal; and (4) that therefore the conviction should be affirmed.

Questions relating to the sexual abuse of small children are so offensive to normal sensibilities that it is difficult to deal with them with objectivity. It is undoubtedly true that we as human beings are in varying degrees unaware of the prior conditioning and the emotional motivations which influence our thinking. I suppose that the best any of us can do is to examine such a situation as dispassionately as possible. It may

---

3. "A reasonable doubt is not a mere imaginary, captious, or a possible doubt, but a fair doubt, based upon reason and common sense, and growing out of the testimony of the case. It is such a doubt as will leave the juror's mind, after a careful examination of all the evidence, in such condition that he cannot say that he has an abiding conviction, to a moral certainty, of the defendant's guilt." State v. Williamson, 22 Utah 248, 256, 62 P. 1022 (1900).

well be that the foregoing has something to do with the fact that the judges of this court do not view this record in the same way; and that I do not see in it any proper basis for the criticisms made of the trial court and the proceedings, and particularly not for imputing fault to the trial judge based upon statements made by the prosecutor in discussing the case.

Proceedings against one accused of this type of crime often necessarily rest largely upon the testimony of very young victims, as is true in this case. A two-faceted problem is presented: accepting the testimony of a young child with the natural limitations of intelligence, memory and maturity, or rejecting it, which may result in allowing one guilty of such a crime to escape from being properly dealt with. For this reason it is incumbent upon the courts to exercise great caution with respect to the testimony of these little girls, both in the eliciting of their testimony and the judging of its credibility. It is my definite impression that the trial judge was fully aware of this and that he exerted commendable efforts to comply with that requirement; and this is also true of each of the attorneys.

In the very nature of things the question of the competency of a child to testify must be left largely to the discretion of the trial court. Therefore, the universally accepted rule is that if the trial judge is satisfied, the reviewing court will not overrule unless it

is patent and clear that there was an abuse of discretion. See State v. MacMillan, 46 Utah 19, 145 P. 833.

Each of the girls, Shana seven, and Christine six, in preliminary questioning showed plainly an understanding of the difference between telling a lie and the truth, of the importance of telling the truth, and gave assurance that she would tell only the truth of what happened and not what anyone had told her to say. They thus met the generally accepted test for being permitted to testify if demonstrated to the satisfaction of the trial judge. See footnote one of main opinion.

It is true that the little girls were not glib; that they had inadequate vocabulary about such matters; that they nodded heads and had to be told to answer audibly: yes or no. This all impressed me as not unnatural, and in fact, as enhancing credibility because it indicates they had not been coached with any fixed story. Moreover, in spite of the fact that the exclusion of witnesses was ordered, and each of the little girls was required to testify alone, each told about occurrences with the defendant from which I can see no other reasonable conclusion than that the offense had been committed. The facts that they related about being required to put their mouths to defendant's privates and the things that resulted therefrom, impel me to share the

view of the mother (called as a witness for the defendant) who testified:

> * * * I don't know how children that age could dream up that stuff. I've never told them things like that.

There is also the evidence of Mrs. Taylor that after this matter came to light through the grandmother in what impresses me as a not unnatural turn of events, the defendant made threats against Mrs. Taylor (the mother) on several occasions to dissuade her from bringing the matter to court, telling her that:

> When all of this came out in court that my kids would be taken away from me before I left the court * * *

and that after threats failed, he offered her money to go away until after the time for the trial had passed.

I have referred to the record only lightly. It is indeed a sordid affair; and what should finally be done about it I would willingly leave to the juvenile court whose duty it is. But such distressing, even sickening, troubles will not vanish either by hoping they will go away, or by brushing them under the rug. Nor can I see how either the instant situation, or the cause of law and order generally, will be benefited by a reversal of this conviction, which I believe under established rules should be affirmed.

ELLETT, J., concurs in the dissenting opinion of Mr. Chief Justice CROCKETT.