STATE of Utah, Plaintiff and
Respondent,

v.

Carl WILKERSON, Defendant
and Appellant.

Nos. 16576, 16577.

Supreme Court of Utah.

May 29, 1980.

John C. Beaslin, Vernal, and Sumner J. Hatch, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Ernest W. Jones, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Appeal from convictions of forcible sexual abuse [1] and forcible sodomy with a person under the age of fourteen.[2]

The defendant is the paternal grandfather of the victim who was six years old when the alleged offenses occurred. Defendant lived with his wife in Duchesne, Utah, where he owned and operated a grocery store. The victim lives with her mother and stepfather in Maeser, Utah, but would often visit her natural father, who also lived in Duchesne, Utah. Sometime during the first part of April, 1978, the victim brought certain events to the attention of her mother, which resulted in the charges presently lodged against defendant.

The two charges were tried as separate cases on June 6, 1978. The trials were to the court, in Uintah County,[3] defendant having waived a jury trial. Although the legal aspects of the cases are treated together by the parties on appeal, and in this opinion, the evidence admitted at each trial is herein discussed separately.

The first case was on a charge of forcible sexual abuse, a third-degree felony. The prosecution called as witnesses, the victim and her stepfather, Robert May. From their testimony the following is abstracted: On or about September 15, 1977, the victim went to stay with her natural father, her mother and stepfather having gone on vacation to Lake Powell in Southern Utah. The father, in turn, sent the victim to stay with her grandparents. On the evening of her arrival at her grandparents' home, the victim took a bath. Thereafter, while still unclad, she went into the living room where both defendant and his wife were sitting. The victim sat down on the couch near defendant. The victim was covered with an "afghan" blanket, beneath which defendant placed his hand and stroked or touched the victim's genitals.

When the state had rested, the defense moved for a dismissal on the basis of insufficient evidence. The court reserved ruling on the matter whereupon the defense proceeded to call its witnesses. The defense first called defendant's wife, who testified that she knew nothing of the incident related by the victim. The defendant himself then testified that he had never knowingly touched the victim in the anal or vaginal area. On cross examination, defendant testified to having had a conversation in the presence of several people, including the police chief. He admitted to having said that if the victim needed any treatment that he would pay for it, but denied having ever made a statement to the effect that he knew he had a problem and was going to get some help for it.

The prosecution then called Douglas Horrocks, the Duchesne Police Chief, as a rebuttal witness. Horrocks testified that he was present when the defendant had made the statement relating to his willingness to pay for the victim's treatment and that defendant had also said that "he recognized that he had a problem, that he had already contacted and had one session with a psychiatrist . . . ."

Following closing arguments, the court took the matter under advisement.

The second case was on the charge of forcible sodomy with a person under the age of fourteen, a first degree felony. The prosecution called as witnesses the victim, her mother, and her stepfather. From their testimony, the following facts are abstracted: In February of 1978,[4] the victim visited her natural father in Duchesne, her mother and stepfather having gone to Salt Lake City to attend a horse racing championship. By the victim's testimony, at a time in the late evening when her grandmother was not home, defendant carried the victim into the master bedroom. He disrobed and told her to do likewise. She then lay on the bed while defendant performed an act of oral

1. U.C.A., 1953, 76-5-404.

2. U.C.A., 1953, 76-5-403.

3. Venue was changed from Duchesne County.

4. Testimony at trial merely placed the time as "the third week in February." The victim testified that she thought it was "before Christmas."

sodomy on her person in that "he put his tongue where I go to the bathroom."

The defense called defendant who testified that he had, on occasion, seen his granddaughter disrobe in his bedroom,[5] but that he had not disrobed in her presence. Defendant's wife testified that there was never a time when she had left defendant and the victim alone at the Duchesne residence.

Pointing to discrepancies between testimony offered at the preliminary hearing and at trial, the defense moved for a directed verdict which was denied. Following closing arguments, the court took the matter under advisement.

On June 14, 1979, the court rendered its decision, finding defendant guilty as charged in each case. On July 18, it was ordered that prior to sentencing, defendant be committed to the custody of the Division of Corrections for a 90-day evaluation. On October 16, 1979, the defendant was sentenced as follows:

> On the 1st degree felony, . . . life imprisonment in the Utah State Penitentiary, $5,000 fine; on the 3rd degree felony, . . . up to 5 years in the Utah State Penitentiary and $1,500 fine. Imposition of the sentence to the State Penitentiary shall be deferred pending further therapy and treatment and after a report is received from the Community Correction Center concerning this matter.

On February 1, 1980, the court amended the sentence. The fine was changed to $3,000 for the first degree felony and $2,000 for the third degree felony. Execution of imprisonment was stayed and defendant was placed on probation with the Adult Probation and Parole Department for a period of three years. Defendant was ordered to undergo any counseling or participate in any other program the Department feels is beneficial to defendant. He was also ordered to establish a trust fund in the amount of $1,500 to be administered by the court for the benefit of the victim in any counseling or therapeutic assistance required.

On appeal, defendant challenges the convictions on three bases. He first claims that the court abused its discretion in allowing the victim to testify as there was insufficient foundation as to her competency. Basically, the claim is that she could not be believed because of the confusing testimony she offered and her lack of understanding as to what it means to tell the truth.

▮ The law in Utah requires that in order for a child under the age of ten years to testify in court there must be evidence that the child is competent to do so.[6] The trial court has substantial discretion in examining the ability of the child to perceive and truthfully relate facts. The following statement from *State v. Smith*,[7] is enlightening as to factors a trial court may properly consider:

> The testimony of a six-year-old child is not rendered completely incompetent nor entirely discredited solely because of her age. As we have previously observed, no particular age nor any specific standard of mental ability can be set as the qualification for giving testimony, but it is an important fact to be considered, along with others, in determining whether she should be allowed to testify. What is essential is that it appear that the child has sufficient intelligence and maturity that she is able to understand the questions put to her, that she has some knowledge of the subject under inquiry and the facts involved therein; that she is able to remember what happened; and that she has a sense of moral duty to tell the truth. Whether she meets these tests and is therefore a competent witness is within the sound discretion of the trial court to determine. His ruling will not

5. ". . . she was quite a hand to disrobe."

6. U.C.A., 1953, 78–24–2.

7. 16 Utah 2d 374, 401 P.2d 445 (1965); see also *State v. Mills*, Utah, 530 P.2d 1272 (1975);

*State v. Sanchez*, 11 Utah 2d 429, 361 P.2d 174 (1961); *State v. Dixon*, 114 Utah 301, 199 P.2d 775 (1948); *State v. Zeezich*, 61 Utah 61, 210 P.2d 927 (1922).

be disturbed in the absence of a clear showing of abuse [thereof]. [Citations omitted.]

In this case, there was sufficient evidence to establish that the little girl had a sense of moral duty to tell the truth; that she understood the questions put to her; and that she had some knowledge of the incidents under investigation. She testified that raising her right hand and taking an oath was important because it meant "to tell the truth." She said she knew the difference between telling the truth and telling a lie, and that it was wrong to tell a lie, having learned all about it "in Primary."[8] She testified as to her age, birthday, and schooling. She was able to explain where the incidents occurred, who was present, and what she was doing before the incidents. The only basis upon which defendant challenges all of this is that some of her testimony was somewhat less definitive when she had testified at the preliminary hearing more than a year before. Based on the testimony offered at trial, there is substantial evidence to support the following finding of the trial court:

. . . The court was satisfied that the child had sufficient intelligence to understand the questions, that she had sufficient attitude to remember and relate relevant and material facts, and that she had the ability to distinguish between truth and error, and to understand the nature of the oath. The evidence indicated that she was a good student in school. The court is cognizant of the fact that it was difficult for the child to remember certain time sequences and that she paused frequently before responding to questions. The court was convinced that the condition was caused by the lapse of time between the incident in question, the tender age of the child and the difficult subject in which the child was required to respond. The court holds that the child was qualified and competent to testify.

Defendant's second challenge on appeal relates to the sufficiency of the evidence. The basic rule governing such a claim is that the evidence and all reasonable inferences fairly to be drawn therefrom must be viewed in a light most favorable to the verdict.[9] Although the charges are based almost entirely on the testimony of the victim, the decision to give her testimony significant weight and credibility was within the prerogative of the trier of fact.[10] The evidence adduced at trial (as abstracted *supra*) is sufficient for a reasonable mind to find the defendant guilty beyond a reasonable doubt.

Defendant's third and final point on appeal is that the time of the two incidents forming the bases of the convictions is so uncertain that defendant is placed in danger of double jeopardy.

The purpose of pleadings in a complaint of information is to put the defendant on notice as to the contents of the offense and the date thereof;[11] however, this Court has held that the time or date of the offense may or may not be a critical element for conviction. In *State v. Cooper*,[12] we held that what is critical is not the precise date and time, but that the act with which defendant was charged was sufficiently identified and singled out by the locus of the offense, and the particular circumstances surrounding it. In the present instance, testimony of state's witnesses narrowed the possible times for the commission of the offenses to two trips out of town by the victim's mother and stepfather when they delivered the child to her father, who in turn, took her to defendant's home. Defendant himself corroborates the visits. In-

---

8. Primary is an organization of the L.D.S. Church designed for teaching young children.

9. *State v. Wilson*, Utah, 565 P.2d 66 (1977).

10. This is especially true given that offenses of this type are typically done with the greatest possible stealth and secrecy such that the victim's testimony is the only evidence upon which to determine guilt or innocence. *State v. Smith, supra*, footnote 7.

11. U.C.A., 1953, 77–21–8.

12. 114 Utah 531, 201 P.2d 764 (1949).

asmuch as all circumstances surrounding the alleged acts sufficiently identifies them as unique, the requirements of *State v. Cooper* are met, and no danger of double jeopardy exists.

Affirmed.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.