In the Interest of CB, a Minor.

CB, a minor, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. C–87–2.

Supreme Court of Wyoming.

Jan. 26, 1988.

Roger Cowan of Harris and Morton, Evanston, for appellant.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen. Richard E. Dixon, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

On March 6, 1987, after a bench trial, appellant was found to have committed a delinquent act as defined in § 14–6–201(a)(ix), W.S.1977 (July 1986 Replacement).[1] The act he committed was a violation of § 6–4–403(b)(iii) and (c), W.S. 1977 (Cum.Supp.1986),[2] performing an indecent or obscene act in the presence of a child. After a dispositional hearing, appellant was placed in the custody of the Wyoming Board of Charities and Reform to be placed in the Wyoming Boys School in Worland for an indefinite term. Appellant was subsequently released to the custody of his mother, under terms and conditions, pending the outcome of this appeal.

Appellant raises three issues:

"I. Whether the trial court abused its discretion by allowing a three (3) year old child to testify over objection that the witness was not competent.

"II. Whether allowing testimony of a three (3) year old child denied accused the right of confrontation under the Sixth Amendment of the Constitution of the U.S. and § 10 Article I of the Constitution of the State of Wyoming.

"III. Whether the testimony of [the] three (3) year old child was prejudicial error."

Our determination on issue I precludes analysis of issue III. We address issues I and II and affirm.

■ Apellant was found to have committed the offense alleged based on allegations that he exposed his penis to an infant female child. The victim was almost three years old when the incident occurred and just over three years old when the trial took place.

At trial the victim was called as a witness, and the court held a competency hearing in the jury room. Defense counsel never moved to exclude the victim's testimony. Further, defense counsel did not make any formal objection on the competency issue during questioning by the attorneys and the court. The only action by defense counsel suggesting a question regarding the victim's competency as a witness was a remark made during the competency testimony.

"MR. COWAN: Your Honor, this is certainly an endearing little girl but I think the Court can see that she really doesn't understand the difference between what is a fable and what is truth."

The trial court responded by explaining, on the record, its impressions of the victim's competency to testify, concluding that to that point it had not heard enough testimony to rule on the competency issue. The victim then continued to answer questions testifying about the allegations against appellant. Defense counsel never uttered another word in opposition to the victim's competency to testify and did not address the issue in closing argument.

■ We begin by holding that appellant did not make a proper objection to the competence of the victim to testify at any point during the trial. The sole remark of defense counsel quoted above was amphibological at best. Consequently, we analyze this issue under the three-part test arising out of the plain-error doctrine. First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he

1. Section 14–6–201(a)(ix) provides:
   "(a) As used in this act:
   *     *     *     *     *     *
   "(ix) 'Delinquent act' means an act punishable as a criminal offense by the laws of this state or any political subdivision thereof * * *."
   Section 14–6–201 is now codified in Cum.Supp. 1987.

2. Section 6–4–403(b)(iii) and (c) provides in pertinent part:
   "(b) No person shall knowingly:

   *     *     *     *     *     *
   "(iii) Commit any indecent or obscene act in the presence of a child;
   *     *     *     *     *     *
   "(c) A person violating this section is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both.
   * * * "
   Section 6–4–403 is now codified in Cum.Supp. 1987.

was denied a substantial right resulting in material prejudice against him. *Brown v. State*, Wyo., 736 P.2d 1110, 1115 (1987); and *Larsen v. State*, Wyo., 686 P.2d 583, 584 (1984). The alleged error in this case is that the victim was not competent to testify and that the trial court abused its discretion in allowing her to do so. The trial transcript of this case does not demonstrate that a clear and unequivocal rule of law was violated.

Rule 601, Wyoming Rules of Evidence states:

"Every person is competent to be a witness except as otherwise provided in these rules."

In *Baum v. State*, Wyo., 745 P.2d 877, 879 (1987), we said:

"Intelligence, not age, is the guiding criteria in determining the competency of a witness. [Citation.] Generally, ' * * * [A] person is competent if he has sufficient understanding to receive, remember and narrate impressions and is sensitive to the obligations of the oath.' * * *"

We follow a five-part test to determine the competency of a young child as a witness. To be competent, the child witness must demonstrate

" '(1) an understanding of the obligation to speak the truth on the witness stand;

" '(2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it;

" '(3) a memory sufficient to retain an independent recollection of the occurrence;

" '(4) the capacity to express in words his memory of the occurrence; and

" '(5) the capacity to understand simple questions about it.' [Citations.]" *Larsen v. State*, supra, at 585.

See also *Baum v. State*, supra, at 879.

The trial court has a duty to determine the child's abilities under each factor of this test. The trial court's determination is within its sound discretion, and will not be disturbed unless shown to be clearly erroneous. *Baum v. State*, supra.

During the competency hearing in the jury room, the following exchanges between counsel and the victim occurred:

"DIRECT EXAMINATION

"BY MR. DONOVAN:

"Q. Can you tell everybody who [mother's first name] is? You said [mother's first name] gave you your necklace. Who's [mother's first name]?

"A. [Mother's full name].

\* \* \* \* \* \*

"Q. Is that—What is your mom's name?

"A. [Mother's first name].

"Q. So [mother's full name] is your mom?

"A. (The [victim] nodded.)

"Q. Is that right?

"A. (The [victim] nodded.)

"Q. Do you have a dad?

"A. (The [victim] nodded.)

"Q. What is your dad's name?

"A. [Father's first name].

"Q. What is your name?

"A. [Victim's first name].

"Q. Do you have a middle name or is it just [Victim's first name]?

"A. I'm this old. (Indicating)

"Q. You're three years old?

"A. (The [victim] nodded.)

\* \* \* \* \* \*

"Q. Okay. [Victim's first name], you said you were three years old, is that right?

"A. (The [victim] nodded.)

"Q. Is that the truth or a lie?

"A. The truth.

"Q. The truth. What if I say [Victim's first name] is five years old. Is that a truth or a lie?

"A. A lie.

"Q. Is that good or bad if I lie?

"A. Bad.

"Q. What happens to me if I lie, hum?

"A. I get spanked.

"Q. What happens to [Victim's first name] if she lies?

"A. Spanks.

"Q. You get a spanking?

"A. (The [victim] nodded.)

"Q. Yeah. If we asked you questions, will you tell the truth?

"A. (The [victim] nodded.)

"Q. Will you tell the Judge what you know?

"A. Yes."

After defense counsel's remark, the victim testified to the night of the incident by referring to anatomically correct dolls as follows:

"Q. Okay. What do you want to name this doll?

"A. [Defendant's first name].

"Q. [Defendant's first name]. Okay. Do you know—you said you know that [Defendant's first name] over there? (Indicating)

"A. (The [victim] nodded.)

"Q. Did that [Defendant't first name] ever hurt [Victim's first name]?

"A. (The [victim] nodded.)

"Carl's friend.

"Q. Carl's friend, [Defendant's first name].

"And where's Carl's friend, [Defendant's first name]?

"A. At court.

"Q. At court. Is that Carl's friend [Defendant's first name] right there? (Indicating)

"A. (The [victim] nodded.)

"Q. How did—how did Carl's friend [Defendant's first name] hurt [Victim's first name]?

"A. (Indicating)

"Q. Tell me? Can you say it?

"MR. COWAN: Can we have this for the record, Your Honor?

"THE COURT: Yes.

"MR. COWAN: Your Honor, we would like the record to indicate that the little girl—the witness is using her arm and striking down below her waist. I can't see what she's—

"VICTIM: Right here. (Indicating)

"THE COURT: She's slapping her herself on the bottom and now she's lifting her dress, is she not, Mrs. Phillips?

"MRS. PHILLIPS: She is, Your Honor.

"VICTIM: I'm bigger. I go to high school. (Indicating)

"Q. Can you tell the Court what you call that, where [Defendant's first name] hurt you? What is that?

"A. The butt.

"Q. A butt.

"A. Yeah.

"Q. Does this little baby have a butt, this doll?

"A. (The [victim] nodded.)

"Q. Can you point to the butt and show where it is?

"A. (Indicating)

"MR. DONOVAN: Again, Your Honor, we would ask the record reflect she has pointed to the—the buttocks area of the Cabbage Patch doll.

"VICTIM: I'm going to have one of them, sisters. (Indicating)

"Q. Is that where [Defendant's first name] hurt you, right there?

"A. (The [victim] nodded.)

"Q. Do you know what he—what did he hurt—Here, do you want to hold her again or not?

"A. (The [victim] nodded.)

 *     *     *     *     *     *

"Q. [Victim's first name], can you tell me what [Defendant's first name] used to hurt your butt? How did he hurt your butt? .

"A. His butt.

"Q. With his butt?

"A. (The [victim] nodded.)

"Q. Can we use the [Defendant's first name] doll now and do you want to play with that one?

"A. No, you can.

"Q. I'll play with him. Okay.

"A. I want to play with the girl.

"Q. Can she show me where the [Defendant's first name] doll's butt is? Where is it?

"A. In here. (Indicating)

"THE COURT: She's pulling down the trousers of the doll.

"Q. Can you point to the butt?

"A. (Indicating)

"MR. DONOVAN: I would ask the record to reflect she's touching the—

"A. He needs to go potty.

"MR. DONOVAN: —the genital area.

"THE COURT: She's touching the penis of that doll or what is—

"VICTIM: It's needs to go potty.

"THE COURT: —or what represents the appendage of the penis on that doll.

"A. He needs to go potty.

"Q. Okay. He can go potty in a little while. Can you play with the dolls and show how [Defendant's first name] hurt your butt?

"A. Right here. (Indicating)

"Q. Right there. And what did he do with his butt? Can you show on the [Victim's first name] doll.

"A. Here. (Indicating)

"Q. Where, show me on this doll, can you?

"A. Other side.

"Q. On the other side.

"THE COURT: The doll was facing up. She's now turning the doll face down, pulling down the pants of the doll, of the female doll.

"Q. Can you show me what [Defendant's first name] did to you? How [Defendant's first name] hurt you?

"A. Hurt the butt.

"Q. Okay. Show me. Can you show with the two dolls?

"A. Right there. I'm going—(Indicating)

"Q. And that's what [Defendant's first name] did to you?

"A. Peed on—

"Q. What did he do to [Victim's first name]?

"A. He peed on her. Peed on her.

"MR. DONOVAN: I would ask the record to reflect that she placed the male doll's penis in the area of the female's buttocks.

"THE COURT: That's what she did."

■ There are other portions of the victim's testimony that could be interpreted to be confusing or contradictory as they appear in the transcript. However, we do not presume to place ourselves in the shoes of the trial court in these cases by reading a cold record. The trial court sees the witness' facial expressions, hears inflections in her voice and watches her mannerisms during examination. These observations are a vital part of the ultimate ruling on competency. Consequently, we defer to the trial court's discretion in all cases excepting only those cases where an abuse of judicial discretion is plain. Judicial discretion is defined as " * * * sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State*, Wyo., 720 P.2d 894, 897 (1986). This standard, in the context of the plain error doctrine, governs our review of this record.

Applying these principles, and after careful review of the entire record, we cannot say the trial court abused its discretion by allowing the victim to testify. There is no doubt that the court observed a bright three-year old child. She knew her name, her age, could identify close relatives by name and differentiated between telling the truth and telling a lie. In addition, she was able to verbally recall and show what happened to her the night of the incident in words and using the anatomically correct dolls. While we appreciate the serious situation created when a young child is a primary witness in a criminal trial, that circumstance alone does not " * * * prevent the process of justice from functioning." *Larsen v. State*, supra at 586, quoting *State v. Smith*, 16 Utah 2d 374, 401 P.2d 445, 447 (1965).[3] There was no abuse of discretion under *Martin v. State*, supra.

■ Appellant contends under issue II that he was denied meaningful cross-examination of the victim by her failure to answer defense counsel's questions. This alleged unresponsiveness is said to violate appellant's rights under the Sixth Amendment of the United States Constitution and Art. 1, § 10 of the Constitution of the State of Wyoming. We do not disagree with appellant's assertions that the right to confront witnesses in a criminal trial is critical and implies the ability to put questions to a witness and obtain answers to elicit infor-

---

**3.** Testimony from the child's mother and grandmother was consistent with the testimony of the child, and standing alone likely was sufficient to convict the juvenile.

mation and test witness credibility. *Martinez v. State*, Wyo., 611 P.2d 831, 837 (1980). This trial record, however, is not an example of an unresponsive witness denying the appellant his right to meaningful cross-examination. While the trial transcript contains testimony in which the victim was not totally responsive, it also contains a minimum of six pages of testimony where the victim answered specific questions pertaining to appellant's theory of the case. For example, the victim testified at length about what occurred when appellant spanked her in her bedroom the evening of the incident. She also testified that one of appellant's friends was sleeping on the couch that evening and referred to him by his name. A person is not denied his constitutional rights to confrontation because an adverse witness does not testify in his favor. Appellant had a meaningful confrontation of the victim when she testified. His constitutional rights were not violated.[4]

Affirmed.

---

**4.** We also note that the trial court took the unusual step of viewing a videotape of an interview conducted with the victim a day after the incident as a part of the sentencing hearing. Before viewing the tape at the sentencing hearing, the trial court asked appellant if he had any objections and he did not. The tape was not entered as evidence at the trial and had no impact on the guilty verdict. Because the court viewed the tape after a determination of guilt was rendered, and because appellant did not object to the tape or raise the issue on appeal as plain error, we do not consider it in this opinion.